ROGERS, Justice.
 

 This case comes here for the second time on an appeal from a judgment ordering Rufus L. Jones and William Jones to vacate and surrender within twenty-four hours a 79-acre cotton farm belonging to Miss M. Edith Wooten, and upon their íailure to do so, directing the sheriff to forthwith eject them in the manner provided by law. The judgment was rendered in two summary proceedings, which were consolidated and tried together, brought under the provisions of Act No. 298 of 1938 by Miss Wooten against Rufus L. Jones and William Jones who, she alleges, were unlawfully occupying her property.
 

 Plaintiff alleges that on December 2, 1935, she acquired the property by purchase from the defendant, Rufus L. Jones, by notarial act which was timely recorded; that after acquiring the property she employed Jones as overseer and furnished him a house in which to live and also, leased him a portion of the property; that in October, 1941, she discharged Jones as her overseer and his lease having expired, she gave him the statutory notice to vacate; that he refused to obey the notice, and suit was brought to eject him.
 

 Plaintiff alleges that she permitted the other defendant, William Jones, son of Rufus L. Jones, to occupy a small house situated near the principal farm dwelling on her property and that she gave him the required notice to vacate, which he refused to do, and suit was also brought to eject him.
 

 Defendants answered the suits denying that plaintiff owned the land and that they occupied the land as lessee, overseer, or by sufferance. They particularly denied that Rufus L. Jones had ever executed a deed to plaintiff, but averred that if any deed was executed, it was obtained by fraud and misrepresentation, without the consent and knowledge of Rufus L. Jones or his wife, and was therefor void.
 

 Upon the hearing of the consolidated cases, plaintiff offered in evidence the act of sale from Rufus L. Jones to her, dated December 2, 1935, and testimony to prove the other allegations of her petitions. When • the attorney for the defendants attempted to cross-examine Mrs. Maude E. Wooten, plaintiff’s mother and the main witness in her behalf, for the purpose of showing that Rufus L. Jones did not execute the act of sale to Miss Wooten or that his signature thereto was obtained through fraud and misrepresentation, the attorney for the plaintiff objected on the
 
 *959
 
 ground that the testimony was irrelevant and immaterial; that the deed itself was the best evidence, and that it could not be changed, varied or altered in any manner by parol testimony. The objection was sustained by the trial judge on the ground it was almost impossible to prove that an authentic act had been obtained by fraud and that a party to such an instrument could not show what happened prior to the time of its execution.
 

 The trial judge rendered two separate judgments in favor of the plaintiff, and the defendants appealed. Holding that the trial judge erred in excluding parol testimony to prove the averments of defendants’ answer that Rufus L. Jones did not execute the notarial act of sale conveying the land involved to plaintiff, or that his signature thereto was obtained by fraud and misrepresentation, this Court annulled the judgments and remanded the case to the district court for further proceedings consistent with the views expressed. Wooten v. Jones, 200 La. 333, 8 So.2d 46.
 

 After the case was remanded, the defendants filed an amended and supplemental answer in the district court in which they admitted Rufus L. Jones signed the act of sale dated December 2, 1935, thus abandoning the plea of forgery and electing to stand on the defense of fraud, conspiracy and misrepresentation.
 

 The defendant, Rufus L. Jones, alleged in the answer that he could neither read nor write except to sign his name and that he thought the instrument he was signing was the acknowledgment of a future indebtedness to Dr. Wooten, the father of plaintiff, and that he had no idea he was signing an act of sale because the instrument was not read to him. The answer then details various transactions alleged to have taken place between Rufus L. Jones and Dr. Wooten through a period of years.
 

 In their answers, the defendants do not pray that the deed from Rufus L. Jones to plaintiff be annulled. They merely pray that plaintiff’s suit be dismissed.
 

 The case went to trial on the issue of fact as presented by the pleadings, as amended, namely, whether there existed any fraud and misrepresentation in connection with the execution of the act of sale of December 2, 1935, as would justify the court to dismiss the suit. The trial judge after hearing the parties resolved this issue of fact against the defendants and we find nothing in the record that would warrant us to disturb his judgment.
 

 The facts disclosed by the record are as follows: In 1919, Mrs. Emily Choate Jones, wife of Rufus L. Jones, inherited from her mother an undivided one-half interest in the property involved herein and she purchased from her sister the remaining undivided one-half interest thereby vesting her with title to the whole property. In the latter part of 1919, Mrs. Emily Jones and her husband, Rufus L. Jones, executed a mortgage for $1500 in favor of the Federal Land Bank of New Orleans. Some tifne thereafter- — the exact date is not shown — Rufus L. Jones, being in need of funds to pay taxes and installments due on the mortgage held by the Federal Land Bank and to carry on his farming operations, obtained a loan of $1000 from the Bank of Alto, giving the
 
 *961
 
 bank two notes of $500 each as evidence of the loan. These notes were secured by an act of mortgage signed by Rufus L. Jones and his wife, Mrs. Emily Jones, covering the tract of land involved in this case. In 1924, these two mortgage notes were purchased from the Bank of Alto by Dr. M. W. Wooten, the father of the plaintiff. Dr. Wooten paid the Bank of Alto $1520 for the two notes, which, in 1926 or 1927, he pledged, as collateral security, to the Mangham State Bank. When one of the notes was about to prescribe, Mr. T. W. Stark, acting for the Mangham State Bank, insisted that Dr. Wooten replace the notes. As Dr. Wooten was unable to comply with the request of Mr. Stark and Rufus L. Jones and his wife, the makers of the mortgage notes, were unable to pay them, the Mangaham State Bank foreclosed the mortgage and bought in the property at sheriff’s sale. The property was adjudicated to the Bank for $2200, and the Bank in compliance with its bid paid the sheriff $155.71, being the amount of costs and taxes, retained in its possession $1923.17 to satisfy the prior mortgage held by the Federal Land Bank and three tax subrogations, and as owner of the notes sued on retained the remainder of its bid, to-wit $121.12, as a credit on the writ.
 

 The Mangham State Bank, which acquired the property at sheriff’s sale on March 12, 1927, sold the property to Tegola, Inc., on December 31, 1927. This sale was made for a cash consideration of $2200. On October 31, 1929, Tegola, Inc., sold the property to Rufus L. Jones for $2248.12, represented by ten notes of $224.81 each, executed by Jones and made payable in from one to ten years after date, with interest.
 

 Rufus L. Jones remained on the farm and was supplied by the plaintiff, through her mother acting as her agent. Jones failed to keep up his payments to the Federal Land Bank and also failed to pay his taxes. Mrs. Wooten, acting for her daughter, paid the installments due the bank and the taxes in order to protect the ten mortgage notes given to Tegola, Inc. It appears that Dr. Wooten, who was the principal stockholder in Tegola, Inc., had transferred his stock to plaintiff, his daughter, as well as the notes which were given by Jones for the purchase price of the property which he acquired from Tegola, Inc.
 

 On December 24, 1932, the property was sold to Miss Wooten for the delinquent taxes of 1930-1931. Since this tax sale, if permitted to stand, would have the effect of cancelling the mortgage held by the Federal Land Bank, Mr. A. F. Stanton, representing the bank insisted that Miss Wooten and Mr. Jones should immediately arrange to redeem the property and pay the bank’s mortgage. Mrs. Maude E. Wooten, acting as the agent of Miss Wooten, discussed the matter with Jones in the presence of Dr. Wooten who, at that time because of illness, had retired from active practice. As Jones was unable to pay the installments due the Federal Land Bank, the delinquent taxes, and any part of the ten vendor lien notes, he offered to surrender the property. The offer was accepted and on December 2, 1935, the act of sale of the property from Rufus L. Jones to Miss M. E. Wooten, the
 
 *963
 
 plaintiff herein, was executed. The consideration for the sale was, as set forth in the act, “the sum of the surrender and cancellation of those 10 certain vendor lien notes each for the sum of $224.21, as shown in mortgage book 47, page 102 of the records of Richland Parish, Louisiana, and the assumption of the Federal Land Bank Mortgage for $1500.00, as recorded in Mortgage Book 29, page 611 under date of November 12th, 1919, and all taxes now due on the said land.”
 

 Mrs. M. E. Wooten, acting for plaintiff, immediately paid the past-due installments on the Federal Land Bank mortgage and also the delinquent taxes. Miss Wooten expended approximately $3500 in improvements on the property. She also continued to pay the taxes and the installments on the Federal Land Bank mortgage as they fell due.
 

 On the trial of the case Rufus L. Jones, in support of the allegations of his original and supplemental answers, testified that subsequent to the execution of the mortgage for $1000 in favor of the Bank of Alto an oil and gas lease was granted upon the property in favor of the Roxana Oil Company for a consideration of $1 per acre; that Dr. Wooten, the father of the plaintiff, suggested to Jones that as the owner of the mortgage notes Dr. Wooten could foreclose the mortgage in a friendly suit and thus break the mineral lease; that Jones could then obtain a more advantageous lease which would make it possible for him to liquidate the indebtedness due upon the property; that Dr. Wooten advised him he would purchase the property at the foreclosure sale and lease it to Tegola, Inc., for $10 an acre, which would enable Jones to virtually pay off the existing indebtedness and that Jones and his wife, Mrs. Emily Jones, could discharge the balance of the indebtedness, approximately $200, later and Dr. Wooten would then execute a deed conveying the property to Mrs. Jones; that instead of this arrangement being carried out, the mortgage notes were, unknown to Rufus L. Jones and his wife, placed by Dr. Wooten with the Mangham State Bank as collateral to secure an indebtedness due by Dr. Wooten to that Bank; that the Mangham State Bank foreclosed the mortgage and on March 4, 1927, Dr. Wooten purchased the property at the sheriff’s sale and on June 2, 1927, he conveyed the property to Tegola, Inc., a corporation owned solely by him, and that on October 31, 1929, Tegola, Inc., conveyed the property to Rufus L. Jones in accordance with what Jones thought was their agreement.
 

 Rufus L. Jones alleged in his answer and testified that about December 2, 1935, he found he would be compelled to go to New Orleans for a serious operation which would hospitalize him for approximately six weeks; that he went to Dr. Wooten and asked him to pay $97.50, covering an installment that would become due on the mortgage held by the Federal Land Bank during the period he was confined to the hospital; that Dr. Wooten agreed to make the payment to the Federal Land Bank for him and subsequently Dr. Wooten came to his home just before dark and asked him to go with him for the purpose of ex-cuting a document to show the payment to the Federal Land Bank and the indebted
 
 *965
 
 ness due Dr. Wooten in the event Jones failed to survive the operation; that Jones agreed to do this and was taken to the residence of the deputy clerk and ex-officio notary of Richland Parish, -residing in Mangham, where he was told to sign a document presented to him which he did without reading it, as he was unable to read, and without having its contents explained to him; that he signed the deed in the presence of the notary and Dr. Wooten only and not in the presence of the witnesses nor in the presence of the plaintiff.
 

 Jones testified that upon his return from the hospital, Dr. Wooten sought him out and agreed to rent the property from him for a yearly rental of $150 with the privilege of using the pasture for his stock; that in accordance with the agreement, the property, which had been continuously farmed since 1908, was not used for that purpose but was used only as pasture land and that the first notice he received of the possible transfer of his property was on November 13, 1941, when he was given a notice to vacate by Miss Wooten, the plaintiff, which notice he ignored, believing he was the owner of the property.
 

 The testimony given by Rufus L. Jones was supported in some, but not in all, of its aspects by his witnesses. Their testimony, however, was flatly contradicted by Dr. Wooten, by his wife, Mrs. Maude E. Wooten, acting as agent for the plaintiff, Miss Wooten, and by their witnesses.
 

 According to the testimony of Dr. Wooten and Mrs. Wooten and their witnesses, the act of sale dated December 2, 1935, was not executed at the home of the notary, but was executed in the office of the clerk of court at Rayville, Louisiana. Be that as it may, there can be no dispute that the act of sale was signed by Rufus L. Jones, the vendor, Miss M. Edith Wooten, the vendee, the two subscribing witnesses and the deputy clerk.
 

 Prior to the execution of the act of sale on the same day and before the same deputy clerk of court, Miss Wooten executed a tax redemption deed in favor of Rufus L. Jones. This instrument was executed pursuant to the demand of A. F. Stanton, the representative of the Federal Land Bank at Rayville, in order to protect the mortgage held by the bank against the accruing of the three year limitation for the redemption of the property, which was sold for delinquent taxes to Miss Wooten on December 24, 1932.
 

 It is true Rufus L. Jones, although able to' sign his name, is unable to read and write. But he is possessed of common sense and some business experience. He is not unfamiliar with the signing of documents in connection with business transactions. He joined his wife in executing the mortgage in favor of the Federal Land Bank and the notes and mortgage in favor of the Bank of Alto. He signed the act of sale and vendor’s lien notes of October 31, 1929, by which he acquired the property from Tegola, Inc. In June 1929, he purchased a Chevrolet automobile for which he gave his note in part payment of the purchase price and in March, 1930, he granted a $1500 mortgage on the property in favor of the Northeast Louisiana Discount Company of Vicksburg, Mississippi.
 
 *967
 
 These transactions corroborate the testimony produced by plaintiff that Rufus L. Jones knew what he was signing when he executed the act of sale conveying the property in dispute to plaintiff and that he fully understood the consequences of his act, notwithstanding his testimony to the contrary given on the trial of this case.
 

 There are other circumstances which are corroborative of the testimony produced by plaintiff showing the lack of merit in the charge of Rufus L. Jones that he was induced by fraud and misrepresentations to sign the deed conveying the property to the plaintiff. Among these circumstances may be mentioned the payment by plaintiff after she acquired the property of the past-due installments on the mortgage held by the Federal Land Bank as well as the delinquent taxes, the extensive improvements made by plaintiff on the property, a lease by her of a portion of the property to Rufus L. Jones, and her employment of Jones to take care of the remainder of the property at a salary of $25 per month, which was raised to $35 per month during the last year he worked for plaintiff. These subsequent acts of the parties are wholly inconsistent with the claim of Rufus L. Jones that the act of sale by which he conveyed the property to plaintiff was signed under circumstances amounting to conspiracy, fraud and misrepresentation and lack of understanding as to its nature.
 

 Rufus L. Jones testified that after Dr. Wooten, at his request, purchased the mortgage notes held by the Bank of Alto, they agreed Dr. Wooten would foreclose the mortgage securing the notes and would buy in the property at the sheriff’s sale with a view of cancelling the mineral lease held by the Roxana Oil Company; that after he acquired the property, Dr. Wooten would lease the property to Tegola, Inc., for $10 an acre instead of $1 an acre, which was the consideration stipulated in the Roxana lease; that he would then convey the property to Jones or to Mrs. Jones. Dr. Wooten testified he did not know anything about the Roxana mineral lease and he denied he had any understanding with Jones that he would foreclose on the mortgage notes for the purpose of bringing about the cancellation of any mineral lease covering the property. Dr. Wooten purchased the mortgage notes from the Bank of Alto in 1924 and it was not until February, 1927, that the foreclosure proceeding was instituted, not by Dr. Wooten but by the Mangham State Bank. The purpose of instituting the suit at that time was to prevent prescription accruing upon the mortgage notes. The property was acquired at the foreclosure sale by the Mangham State Bank and not by Dr. Wooten. Some months later the Mangham State Bank conveyed the property to Tegola, Inc., and about two years thereafter, namely, on October 31, 1929, Tegola, Inc., sold the property to Rufus L. Jones.
 

 It appears from the record that Dr. Wooten and Mrs. Wooten were for many years on extremely friendly terms with Rufus L. Jones and Mrs. Emily Jones, his wife, and that they had aided them financially in many ways and on many occasions. The uncontradicted testimony shows that Dr. Wooten, as an outright gift, ad
 
 *969
 
 vanced considerable money to Henry Jones, the son of Rufus L. Jones, in order to assist him through medical school, and that when he had been admitted to practice Dr. Wooten, who had retired, turned over to him such of his library as he desired and also permitted him free use of a valuable microscope.
 

 The testimony of Dr. Wooten, which was taken while he was confined by illness in the St. Francis Hospital at Monroe, Louisiana, effectively disposes of the claim of Rufus L. Jones that he had settled in full with Dr. Wooten and that Dr. Wooten, as a result of the settlement, agreed to transfer the 79-acre tract of land, free of encumbrances, to Mrs. Emily Jones, the wife of Rufus L. Jones. Dr. Wooten testified that he and Jones had a settlement of their business transactions on October 31, 1925, at Rayville, Louisiana, while sitting in the automobile of Dr. Wooten. This settlement was made just before the deed from Tegola, Inc., to Rufus L. Jones was executed. Dr. Wooten testified that Jones had rented the 79-acre tract and some adjoining land agreeing to give a certain portion of the crop produced as rent. In 1927 a general overflow occurred and very little cotton was produced in the inundated area during that year. Dr. Wooten supplied Jones through 1927 and paid some installments due on an automobile for his account. Jones made a crop in 1928, but he did not pay anything to Dr. Wooten on the $528 balance due on the 1927 account. In 1929 the tract of land which was worked by a number of tenants of Rufus L. Jones produced forty-three bales of cotton. Dr. Wooten financed the operations, advancing money to pay the farm hands and to furnish them with the necessary supplies.
 

 In response to the request of Dr. Wooten for a settlement, Jones offered to give Dr. Wooten the forty-three bales of cotton produced in 1928 for the current account of the same year, which did not include the balance due Dr. Wooten on the 1927 .account or any portion of the money that was due Tegola, Inc. Dr. Wooten accepted the offer. The amount advanced by Dr. Wooten for the expenses incurred in the farming operations conducted by Jones and for use in his private affairs in 1929 was $4,114. Only thirty-three bales of cotton were delivered to Dr. Wooten because it developed later that ten of the forty-three bales of cotton that Rufus L. Jones had agreed to deliver were sold by Jones to L. L. McConnell and the $498.18 realized on that cotton went to pay a note executed by Jones in purchasing a new Chevrolet automobile in June, 1929. After going over the account in detail, Dr. Wooten forgave Jones the past-due rent and the balance of $528 due on the 1927 account and they agreed on $2,248.12 as the amount Jones was to pay for the 79-acre tract. Dr. Wooten and Jones then entered the courthouse and as explained by Dr. Wooten “fixed the deed, and Mr. Boies, who was President of Tegola, Incorporated, signed it and Mr. Jones signed the ten notes for $224.00 and whatever the cents was.” Dr. Wooten further stated in answer to a question that when they left his automobile and went into the courthouse to execute the deed, Jones fully understood he was pur
 
 *971
 
 chasing the 79-acre tract of land from Tegola, Inc., for the price represented by the ten mortgage notes. Shortly after this transaction was completed, Dr. Wooten, in November, 1929, was obliged by illness to retire from the practice of his profession and to refrain from transacting business of any kind. From that time on he was under the care of a physician and he died suddenly at his home a few months after testifying in that case.
 

 Dr. Wooten, in his testimony, positively denied that he had any understanding with Rufus L. Jones, or that he ever made a request of Jones before Jones went to the hospital that Jones sign some papers for him or give him a showing so that in case anything happened he “would have a showing for the money” and that on the evening before Jones went to the hospital Dr. Wooten got him to go to the house of the notary and sign some papers which he pulled out of his pocket and laid on the table. As a matter of fact, the testimony shows that the act of sale from Jones to Miss Wooten was signed on December 2, 1935, and Jones did not go to the hospital in New Orleans until December 10, 1935, and that he was discharged from the hospital on December 19, 1935.
 

 Upon consideration of the entire record, the salient facts of which we have herein-above pointed out, we are unable to arrive at a conclusion at variance with that reached by the judge of the district court.
 

 For the reasons assigned the
 
 judgment
 
 appealed from is affirmed.
 

 O’NIELL, C. J., concurs in the decree. '